IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JAMIE PUHALLA,                    )
                                 )
                Plaintiff,       )
                                 )
vs.                              )          Case No. 07-1381-MLB
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
                Defendant.       )
_____)


RECOMMENDATION AND REPORT


    This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  <u>Ray</u>
<u>v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
<u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On April 25, 2006, administrative law judge (ALJ) William H.
Rima III issued his decision (R. at 37-43).  Plaintiff alleged
disability beginning November 15, 2002 (R. at 37).  Plaintiff is
insured for disability insurance benefits through December 31,
2007 (R. at 37).  At step one, the ALJ found that plaintiff has

4

not engaged in substantial gainful activity since November 15, 2002, the alleged onset date (R. at 39).  At step two, the ALJ found that plaintiff had the following severe impairments: status post lower back surgery and morbid obesity (R. at 39).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 39-40).  After determining plaintiff's RFC (R. at 40), the ALJ found at step four that plaintiff was unable to perform past relevant work (R. at 42).  At step five, the ALJ found that plaintiff can perform the full range of sedentary work based on Medical-Vocational Rules 201.25 and 201.26 (R. at 42).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 42).

**III.  Did the ALJ properly consider all of the evidence when making plaintiff's RFC findings?**

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);

<u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

The ALJ's RFC findings mirror the opinions of the state agency medical assessment (R. at 40, 190-198).  The ALJ gave substantial weight to the state agency medical assessment, stating that their opinions are "consistent with the evidence in its entirety" (R. at 42).

On December 23, 2003, Dr. James Henderson performed a consultative examination of the plaintiff (R. at 187-189).  The ALJ summarized Dr. Henderson's examination as follows:

> The record documents that upon examination by a consultative examiner, the claimant had **limited range of motion** and **some** difficulty with orthopedic maneuvers. The claimant also had difficulty lying to straight leg raising. However, the claimant's gait and station were stable and no assistive device was used. There was no asymmetrical reflex or sensory deficit.

(R. at 41, emphasis added).

The actual report from Dr. Henderson states as follows:

> NEURO:...Gross motor function is 4/5 strength in the left lower extremity...
>
> The patient had moderate difficulty getting on and off the examining table.
>
> There was severe difficulty with heel and toe walking.
>
> There was severe difficulty squatting and arising from the sitting position.

There was severe difficulty hopping.

CONCLUSIONS

...The patient reports a history of low back
discomfort status post surgical repair.
Today, there is **<u>marked limited range of
motion</u>**.  The patient has difficulty lying for
me to straight leg raise...Gait and station
are stable.  No assistive device is mandatory
today.  There is no asymmetrical reflex or
sensory deficit noted today.  **<u>There is give
way weakness in the left lower extremity</u>**.
There is **<u>severe</u>** difficulty with orthopedic
maneuvers.  Despite surgery, the patient
persists with pain.

(R. at 189, emphasis added).

The ALJ stated that Dr. Henderson found a "limited range of motion" and "some" difficulty with orthopedic maneuvers (R. at 41).  However, Dr. Henderson actually found a "marked" limited range of motion and "severe" difficulty with orthopedic maneuvers (R. at 189).  Thus, the ALJ has clearly misstated the medical evidence in this case.  "Some" difficulty with orthopedic maneuvers is clearly not the same as "severe" difficulty with orthopedic maneuvers, and a "limited range of motion" is not the same as a "marked limited range of motion."  The ALJ cannot mischaracterize the medical evidence, and the ALJ cannot rely on such mischaracterized evidence to either support his decision or so as to not contradict his decision.  Furthermore, the ALJ did not mention the findings of Dr. Henderson that plaintiff had give way weakness in the left lower extremity and that gross motor function is 4/5 strength in the left lower extremity.

7

On January 23, 2006, plaintiff saw her treating physician, Dr. Billings.  The medical notes from that visit indicate that plaintiff cannot walk 100 feet because she would fall or is prone to falling, and that she would like a disability placard because she cannot walk from where she needs to park at a store without having to stop and lean on a car to rest her back (R. at 217). Dr. Billings issued her a certification for disability for disabled parking because she is severely limited in her ability to walk at least 100 feet (R. at 222).

The ALJ asserted that this opinion by the treating physician is "not supported by the medical evidence or the doctor's own treatment notes" (R. at 41).  Although the treatment notes of that date do indicate that plaintiff's pain is "managed" with medication (R. at 217), that is not clearly inconsistent with an inability to walk a distance without falling, being prone to fall, or needing to stop and lean on a car to rest her back. Furthermore, this medical record appears consistent with the opinions of Dr. Henderson that plaintiff has give way weakness in her left lower extremity, a marked limited range of motion, and severe difficulty with orthopedic maneuvers. The opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an

examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  The ALJ has failed to provide a reasonable explanation for giving greater weight to an assessment by a physician who never treated or examined the plaintiff as compared to treating and examining physicians.  Because of the mischaracterization of the medical evidence by the ALJ, and the failure of the ALJ to provide a reasonable explanation for giving greater weight to a medical opinion by a physician who never treated or examined the plaintiff as compared to treating and examining physicians, this case shall be remanded in order for the ALJ to properly consider all the evidence in this case.

On remand, the ALJ should keep in mind that a state agency assessment using a check-the-box evaluation form, unaccompanied by thorough written reports or persuasive testimony is not substantial evidence.  Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007).  The state agency medical assessment provided only brief narrative information, and failed to explain its opinion that plaintiff had almost no postural limitations in light of the conclusions of Dr. Henderson (who had examined the plaintiff) that she had a marked limited range of motion, severe difficulty with orthopedic maneuvers, and give way

weakness in the left lower extremity.  The opinion of the treating physician, Dr. Billings, that she has limited mobility is also clearly inconsistent with the state agency assessment. As the court stated in <u>Fleetwood</u>, the ALJ must develop a sufficient record from which proper RFC findings can be made. <u>Id</u>., 211 Fed. Appx. at 740-741.[1]

## IV. Did the ALJ err in his evaluation of plaintiff's obesity?

First, plaintiff asserts that plaintiff's impairment meets or equals listed impairment 1.04 (Doc. 6 at 11).  Plaintiff has the burden at step three of demonstrating, through medical evidence, that her impairments meet all of the specified medical criteria contained in a particular listing.  <u>Riddle v. Halter</u>, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively.  <u>Caviness v. Apfel</u>, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).  In determining whether plaintiff's impairment(s) equal a listing, all relevant evidence is considered, not just medical evidence.  <u>Cornelius v. Astrue</u>, Case No. 06-1361-MLB (D.

---

[1]As in <u>Fleetwood</u>, the consultative examination by Dr. Henderson did not form specific conclusions about plaintiff's ability to work.  <u>Id</u>., 211 Fed. Appx. at 740.  Plaintiff's treating physician had also failed to offer specific opinions about plaintiff's ability to work.

Kan. Jan. 7, 2008, Doc. 23 at 15-16).

Plaintiff has failed to provide any medical evidence that she meets all the specified criteria of listed impairment 1.04. Therefore, the court finds this argument to be without merit. However, as in Cornelius, the ALJ erroneously stated that in determining equivalency, the ALJ is limited to considering medical facts alone (R. at 40). Therefore, on remand, the ALJ shall make a new analysis of whether plaintiff's impairment(s) equal listed impairment 1.04 in light of 20 C.F.R. § 404.1526, as revised. Cornelius v. Astrue, Case No. 06-1361-MLB (D. Kan. Jan. 7, 2008, Doc. 23 at 15-17).

Second, plaintiff also argued that the ALJ failed to consider limitations caused by plaintiff's obesity. At step two, the ALJ found that plaintiff had a severe impairment of morbid obesity (R. at 39). The ALJ then stated that although plaintiff is obese, the record does not support more than minimal limitations due to obesity (R. at 40). The ALJ recognized the documents show that plaintiff is obese, but also indicated that plaintiff does not allege being functionally limited due to obesity (R. at 40). Thus, the ALJ did consider plaintiff's obesity when making his RFC findings. The court finds no clear error in the ALJ's obesity analysis. However, on remand, the ALJ should consider plaintiff's obesity in light of the evaluation by Dr. Henderson and the limitations noted by plaintiff's treating

11

physician, Dr. Billings.

**V.  Did the ALJ err in his credibility analysis?**

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining

12

that a claimant's complaints were not credible.  Hardman v.
Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand,
an ALJ's credibility determination which does not rest on mere
boilerplate language, but which is linked to specific findings of
fact fairly derived from the record, will be affirmed by the
court.  White, 287 F.3d at 909-910.

When this case is remanded, the ALJ shall reevaluate
plaintiff's credibility after proper consideration is given to
the opinions of Dr. Henderson and Dr. Billings.  In addition,
certain problems with the ALJ's credibility analysis must be
corrected on remand.

In evaluating plaintiff's credibility, the ALJ specifically
stated that "since the surgery, the claimant's medical treatment
has been sporadic" (R. at 40, see also R. at 41).  The ALJ
further noted that plaintiff had not seen her treating physician
for several months, "which is an indication of tolerable pain"
(R. at 41).

The medical records from Dr. Billings indicate on January
23, 2006 that "although [plaintiff] would like to see a back
specialist, she currently does not have insurance and so wants to
hold off on that" (R. at 217).  Plaintiff again saw Dr. Billings
on August 9, 2006 because of "chronic back pain getting acutely
worse" (R. at 234).  That record states that plaintiff "does not
have insurance and wants to hold off on any expensive treatments

13

for the time being" (R. at 234).  Dr. Billings discussed epidural

steroid injections with plaintiff, but plaintiff declined

"secondary to financial concerns" (R. at 234).  At the hearing on

August 8, 2006, plaintiff testified that she did not have

insurance for pre-existing conditions, and therefore she cannot

afford to go to a doctor because she does not have insurance (R.

at 244).

The 10th Circuit, relying on the case of <u>Thompson v.

Sullivan</u>, 987 F.2d 1482, 1489-90 (10th Cir. 1993), has repeatedly

held that the inability to pay may justify a claimant's failure

to pursue or seek treatment.  <u>Threet v. Barnhart</u>, 353 F.3d 1185,

1190 n.7 (10th Cir. 2003); <u>Norris v. Apfel</u>, 215 F.3d 1337

(table), 2000 WL 504882 at *8 (10th Cir. Apr. 28, 2000); <u>Smith v.

Apfel</u>, 149 F.3d 1191 (table), 1998 WL 321176 at *4 (10th Cir.

June 8, 1998); <u>Snead v. Callahan</u>, 129 F.3d 131 (table), 1997 WL

687660 at *4 (10th Cir. Oct. 31, 1997); <u>see also</u> <u>Eason v. Chater</u>,

951 F. Supp. 1556, 1562 (D. N.M. 1996)(claimant should not be

penalized for failing to seek treatment that they cannot afford);

<u>Hockenhull v. Bowen</u>, 723 F. Supp. 555, 557 (D. Colo. 1989)

(evidence of nontreatment is of little weight when claimant's

failure to seek medical treatment can be attributed to their

inability to pay for such treatment).  However, the ALJ did not

consider the evidence in this case that plaintiff lacked medical

insurance to pay for medical treatment, and therefore had not

14

sought medical treatment and had specifically decided not to see
a back specialist and to hold off on certain treatments because
she lacked insurance and therefore could not afford it.  Because
of the failure of the ALJ to consider the evidence regarding
plaintiff's inability to pay for medical treatment, it was error
for the ALJ to rely on plaintiff's sporadic medical treatment to
question her credibility.

The ALJ also relied on plaintiff's statement to Dr. White on
February 20, 2003, about one month after her back surgery, that
she was 99% better (R. at 180).[2]  However, the ALJ did not
mention that on March 10, 2003, two months after her surgery, the
medical records show that plaintiff called to indicate that she
is still having posterior left leg pain which radiates all the
way down into her left ankle (R. at 179).  The ALJ must consider
plaintiff's statement of February 20, 2003 in light of subsequent
medical records, including Dr. Henderson's consultative
examination, and statements by plaintiff to her treating
physician that she was better immediately after surgery, but
indicating that her back pain is now as bad as it was before (R.
at 217).  The medical records from Dr. Billings on August 9, 2006
indicate that plaintiff was in the emergency room over the
weekend because of "her chronic back pain getting acutely worse"

---

[2]The state agency medical assessment also cited plaintiff's
post-surgery statement that she felt 99% better after surgery (R.
at 191).

(R. at 234).  Plaintiff testified at the hearing that the surgery did take the pain away, but that she is now back to square one (R. at 251).  Plaintiff's testimony appears to be generally consistent with her medical records.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on July 11, 2008.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge